FILED
2016 Mar-31  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| EUGENIA WRIGHT STRICKLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:15-cv-00140-JEO |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Eugenia Wright Stickland brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits.  (Doc. 1).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction of this court for disposition of the matter.  (Doc. 16).  *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a).   Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

# I.  PROCEDURAL HISTORY

On August 30, 2011, Strickland protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning December 23, 2010.  (R. 13, 63).[2]  Following the denial of her application by the state agency (R. 63, 68-73), Strickland requested a hearing before an Administrative Law Judge ("ALJ").  (R. 77).  The hearing was held on April 19, 2013.  Strickland, her counsel, and a vocational expert attended the hearing.  (R. 28-61).  The ALJ issued a decision on May 23, 2013, finding that Strickland had not been disabled since her alleged onset date.  (R. 13-27).

Strickland requested the Appeals Council review the ALJ's decision.  (R. 8).  The Appeals Council denied her request for review on December 11, 2014. (R. 1-6).  On that date, the ALJ's decision became the final decision of the Commissioner.  Strickland then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

# II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the

---

[2]References herein to "R.__" are to the page numbers of the administrative record, which is located at Docs. 7-1 through 7-16.

Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.; *Evans*, 551 F. App'x at 524.

## IV.  FINDINGS OF THE ALJ

Strickland was 45 years old on her alleged onset date and 47 years old at the time of her hearing before the ALJ. (R. 15, 31). She is a high school graduate with one year of college education and a degree in cosmetology. (R. 15, 33, 168). She has past relevant work experience as a hair stylist. (R. 21, 55, 168).

In her disability report, Strickland alleges that she has been disabled and unable to work since December 23, 2010, due to tethered cord syndrome, transverse myelitis, gastrointestinal ("GI") mastocytosis, asthma, anaphylactic allergic reactions (hives), and depression. (R. 167). She testified at her hearing that she was prevented from performing her job because she "started to have symptoms of flushing, shortness of breath, fatigue, [and] upset stomach." (R. 33).

The ALJ found that Strickland has the following severe impairments: tethered cord syndrome; degenerative disk disease of the cervical spine; left carpal

tunnel syndrome; food colitis/GI mastocytosis related to a food allergy; contact dermatitis; somatoform disorder; adjustment disorder; and histrionic personalty disorder. (R. 15). He concluded, however, that Strickland's impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[4] (R. 18-19).

The ALJ then found that Strickland has the residual functional capacity[5] ("RFC") to perform light work, subject to the following limitations: she is precluded from climbing ladders, ropes, or scaffolds and from exposure to unprotected heights; she can climbs ramps and stairs and balance, stoop, kneel, crouch, and crawl on no more than an occasional basis; she can handle and finger with the left hand frequently; she should have no more than occasional exposure to extreme heat, cold, and humidity and to irritants such as odors, fumes, and gases; she can understand, remember, and carry out simple instructions in a low-stress setting; and she can sustain occasional interaction with the public, coworkers, and supervisors. (R. 19).

Based on the testimony of the vocational expert, the ALJ found that Strickland could not perform her past relevant work as a hair stylist. (R. 21). He

---

[4]The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

[5]Residual functional capacity is the most a claimant can do despite her impairment(s). *See* 20 C.F.R. §404.1545(a)(1).

further found, however, that there are other jobs in the national economy that
Strickland is capable of performing, including mail clerk, garment sorter, and
order caller.  (R. 22).  The ALJ thus concluded that Strickland was not disabled
from December 23, 2010, through the date of the decision.   (R. 22).

## V.  DISCUSSION

Strickland argues that the Commissioner's decision should be reversed or
remanded for three reasons, all related to her somatoform disorder.[6]  Strickland
was diagnosed with somatoform disorder by Dr. John Goff, a Clinical
Neuropsychologist who evaluated her in August 2012.  (R. 851-60).  Strickland
argues that (1) based on Dr. Goff's evaluation, she meets the requirements of
Listing 12.07, the listing for somatoform disorders; (2) the ALJ improperly
disregarded Dr. Goff's opinion; and (3) the ALJ did not utilize the Psychiatric
Review Technique ("PRT") in analyzing how her somatoform disorder impacts
her functional limitations.  Because these arguments are all inter-related, the court
will address them together.

Dr. Goff explained his somatoform diagnosis as follows:

---

[6]Somatoform disorders are "any of a group of psychological disorders (as body
dysmorphic disorder or hypochondriasis) marked by physical complaints for which no organic or
physiological explanation is found and for which there is a strong likelihood that psychological
factors are involved."  Merriam-Webster Medical Dictionary,
www.merriam-webster.com/medical/somatoform%20disorder (last visited March 29, 2016).

> [Strickland] currently exhibits a lot of symptoms of a systemic illness which she has attributed to mastocytosis. Apparently she underwent a series of gastrointestinal studies. She says that the doctor who did the original studies said they were normal. Apparently somebody else looked at the results and decided that she had mastocytosis of the gastrointestinal tract and that has been her impression ever since. ... [S]he has this plethora of somatic symptoms which she refers to the mastocytosis.
>
> This lady has a somatoform disorder. There are some conversion characteristics present. We have one of these situations where there apparently is some physical abnormality present and it is just that the physical abnormality does not seem to explain the breadth or severity of the symptoms she is displaying to her physicians or to anyone else for that matter. Hence, it might be assumed that she is conjuring up symptoms or intentionally presenting symptoms that are not real but that certainly is not the case. This lady's experience of symptoms is quite genuine and there are no indications from the clinical evaluation or the psychometrics to suggest that she is engaging in any sort of malingering or dissimulation here. ...
>
> Regardless of the etiology of the symptomatology it is quite debilitating to her. She breaks out in hives. She has gastrointestinal or allergic reactions. We also have a broad range of other issues including irritable bowel syndrome, migraine headaches, some visual disturbances, these paresthesias. Hence, she exhibits physical symptomatology which might have a psychological basis across several bodily systems. Again this qualifies her for the somatoform diagnosis.

(R. 855-56). Dr. Goff also completed a Medical Source Statement (Mental) in which he opined, in part, that Strickland had a marked degree of restriction of her daily activities; a marked degree of impairment in her ability to understand, remember, and carry out both simple and complex instructions; an extreme degree

of impairment in her ability to maintain attention and concentration for extended periods; an extreme degree of impairment in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and an extreme impairment in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (R. 859).

Based on Dr. Goff's diagnosis of somatoform disorder and the functional limitations noted in his Medical Source Statement, Strickland argues that she meets the requirements of Listing 12.07, the listing for somatoform disorder.  To meet Listing 12.07, an individual's somatoform disorder must satisfy the requirements in both subsection A and subsection B of the listing.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.07.  Subsection A is met when the disorder is "medically documented by evidence" of one of a number of different conditions, including an "[u]nrealisitc interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious injury." *Id.*, listing 12.07(A)(3).  Subsection B is met when the condition in subsection A results in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in

maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." *Id.*, listing 12.07(B).

Here, the ALJ accepted Dr. Goff's diagnosis of somatoform disorder, noting that the diagnosis was "supported by [Strickland's] continued seeking of medical treatment without clear diagnosable issues" and finding that the disorder was a severe impairment. (R. 15, 20). The court agrees with Strickland that if the ALJ had also accepted Dr. Goff's assessment of her functional limitations, she would satisfy the requirements of Listing 12.07. Dr. Goff's observations that Strickland has a "plethora of somatic symptoms which she refers to [her] mastocytosis" and that she exhibits "physical symptomatology which might have a psychological basis across several bodily systems" are evidence of an "[u]nrealistic interpretation of physical signs or sensations associated with the preoccupation or belief" that she has a serious disease or injury, which satisfies subsection A of the listing. His opinions that Strickland has a "marked" degree of restriction of her daily activities and an "extreme" degree of impairment in her ability to maintain attention and concentration and to perform at a consistent pace would, if accepted, satisfy subsection B of the listing.

The ALJ, however, gave "little weight" to Dr. Goff's opinion, noting that "[w]hile his diagnoses are reasonable, the limitations he reported are not supported

by [Strickland's] treatment records." (R. 21). He observed that Dr. Goff's opinion is "inconsistent with the mental status examinations conducted throughout the medical evidence of record." (*Id.*) In addition, the ALJ expressly found that Strickland's impairments do not meet the requirements of Listing 12.07 because she "does not have any marked functional limitations." (R. 18).

Strickland contends that the ALJ failed to give adequate weight to Dr. Goff's opinion. She argues that the ALJ "falsely asserted that Dr. Goff's findings were not supported by [her] treatment records and were inconsistent with mental status examinations conducted throughout" the medical record. (Doc. 9 at 15). She also argues that the ALJ improperly discounted Dr. Goff's opinion in favor of the opinion of a non-examining physician, Dr. Samuel Williams, a state agency physician who evaluated her mental impairments using the PRT. (Doc. 9 at 13-14).

In determining whether a claimant is disabled, an ALJ considers the medical opinions in the record together with the other relevant evidence. 20 C.F.R. § 404.1527(c). The ALJ evaluates "every medical opinion" regardless of its source. *Id.* § 404.1527(c). In deciding the weight to give to a medical opinion, the ALJ considers (1) whether the opinion's source examined the claimant; (2) whether the source has a treating relationship with the claimant; (3) the relevant

evidence supporting the opinion, particularly medical signs and laboratory findings; (4) the extent to which the opinion is consistent with the record as a whole; and (5) whether the opinion is related to the source's specialization. *Id.* The ALJ need not explicitly mention each of these factors in his written decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011). Weighing the evidence is the ALJ's duty, and the court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winchel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

After carefully reviewing the record, the court is satisfied that substantial evidence supports the ALJ's decision to give Dr. Goff's opinions on Strickland's functional limitations little weight.  The court first notes that Dr. Goff examined Strickland only one time and did not have a treating relationship with her. Therefore, the ALJ was not required to give his opinions great weight.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (affirming rejection of a psychologist's opinion that the claimant had "marked" psychological limitations and noting that "because [the psychologist] examined [the claimant] on only one occasion, her opinion was not entitled to great weight").

12

Substantively, the court observes that there are some inconsistencies between Dr. Goff's psychological evaluation of Strickland and his opinions on her functional limitations.  For instance, Dr. Goff stated in his written evaluation that during his examination of Strickland she was "able to understand, follow and carry out simple and complex instructions" (R. 856), yet in his Medical Source Statement he opined that Strickland had a "marked" degree of impairment in her ability to understand and carry out simple and complex instructions.  (R. 859).  He also opined that Strickland had a "marked" impairment in her ability to remember instructions and repetitive tasks (R. 859), but in his evaluation he noted that Strickland's logical memory for verbal material was fair, that her immediate memory for digits was good, and that she was able to provide personal and current information and to name the president, the previous president, the governor, and the sheriff.  (R. 854).  These inconsistencies undermine Dr. Goff's opinions on Strickland's functional limitations and lend support to the ALJ's decision to give his opinions little weight.

The court also finds that substantial evidence supports the ALJ's determination that Dr. Goff's opinions regarding Strickland's functional limitations are inconsistent with the mental status examinations in the medical record.  While Strickland is correct that the mental status examinations in the

13

record were conducted when she was seeking treatment for her physical symptoms (and not as part of an independent evaluation of her mental health), they nonetheless reflect that Strickland was generally alert and oriented during her doctor visits and that her mood and affect were normal.  Dr. Thomas Emig, a physician at Alabama Neurology and Sleep Medicine, examined Strickland in December 2010 and February 2011, and both times observed that her mood and affect were normal, that her speech was normal, that her cognitive function was normal, and that her comprehension and concentration were within normal limits. (R. 523-28).  When Strickland went to the Cleveland Clinic in April 2011 for a second opinion on her diagnosis of GI mastocytosis, it was noted that there was "suggestion of cognitive or memory disturbance during the examination" but that otherwise she was "oriented to place and situation" and "alert, cooperative, in no distress, and able to provide a coherent history."  (R. 590, 617).  Later that same month, Dr. James Robinson, a physician at West Alabama Family Clinic who evaluated Strickland's complaint of upper and lower back pain, observed that Strickland's judgment and insight were intact, that her mood was normal, and that her affect was appropriate.  (R. 913).  In July 2011, when Strickland was examined at DCH Regional Medical Center after being admitted with complaints of chest pain and overall body numbness, it was noted that she was alert and oriented and

14

that her psychiatric makeup was "appropriate for [her] age." (R. 749, 764). And during an examination in November 2012, Dr. Robinson observed that Strickland's judgment and insight were intact, that she had no abnormal thought processes, and that while her mood was depressed, her affect was appropriate. (R. 919). Notably, none of these physicians ever observed any marked or extreme mental limitations in Strickland's makeup, much less any mental imitations that would prevent her from working.

Moreover, as Dr. Goff himself points out in his written response to the ALJ's decision, "The common feature of the somatoform disorders is the presence of *physical* symptoms that suggest a general medical condition (hence, the term somatoform) and are not fully explained by a general medical condition, by the direct effects of a substance or by another medical disorder (e.g., panic disorder)." (R. 944 (quoting the *Diagnostic and Statistical Manual*, 4th text rev. p. 45 (2000)) (emphasis supplied). In his evaluation of Strickland, Dr. Goff determined that Strickland has a somatoform disorder because she exhibits "*physical* symptomatology which might have a psychological basis across bodily systems." (R. 856) (emphasis supplied). He stated that, regardless of their etiology, Strickland's symptoms are "quite debilitating to her," noting that she breaks out in hives and has gastrointestinal or allergic reactions, irritable bowel syndrome,

migraine headaches, and some visual disturbances.  (*Id.*)

The salient issue, therefore, is not whether Strickland has a somatoform disorder–again, the ALJ accepted Dr. Goff's somatoform diagnosis–but rather whether the physical symptoms manifested by the disorder were so "debilitating" as to render her disabled and unable to work.  As the Eleventh Circuit has noted, "the mere existence of ... impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard."  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Here, the ALJ determined that Strickland's medically determinable impairments could reasonably be expected to cause some of her symptoms, but he concluded that Strickland's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible and that she could perform light work with the restrictions he assessed in his RFC finding.

Substantial evidence supports the ALJ's finding.  As previously noted, Strickland testified at her hearing that her symptoms of "flushing, shortness of breath, fatigue, [and] upset stomach" prevented her from working.  (R. 33).  However, Dr. James Bonner, an allergist who treated Strickland on multiple occasions in 2011 and 2012, repeatedly observed that Strickland was in "no major distress" despite her complaints.  (R. 814, 817, 819, 821).  Indeed, in December

2011 she reported to Dr. Bonner that she was "somewhat better," that she had experienced nausea and vomiting only "on occasion," and that "overall" she felt that she had improved even though her flushing continued.  (R. 823).  When she saw Dr. Bonner six months later in May 2012, she reported that she continued to have problems with flushing but otherwise was doing well with no complaints. (R. 814).  Likewise, Dr. Robinson's progress notes from his examinations of Strickland in 2011, 2012, and 2013 reflect that Strickland complained of chest pain and shortness of breath in January 2011, but that she denied any chest pain or shortness of breath when he examined her in April 2011, November 2012, and March 2013.  (R. 909, 912, 918, 922).  Dr. Robinson's notes also reflect that Strickland consistently denied any nausea, vomiting, or diarrhea except in March 2013, when she reported a "1 day history" of nausea, vomiting, and diarrhea.  (*Id.*) Finally, Kimberly Jones, a state agency medical consultant who performed a physical RFC assessment of Strickland in November 2011, determined that Strickland's symptom allegations were only partially credible, as the severity she alleged was not consistent with the objective medical evidence.  (R. 796).  All of this evidence provides substantial support for the ALJ's determination that Strickland's physical symptoms were not as debilitating as she alleged and that she was capable of performing light work within the confines of his RFC finding.

17

With respect to Strickland's assertion that the ALJ gave improper weight to the opinion of Dr. Williams, the state agency physician who evaluated her mental impairments, the court disagrees.  Dr. Williams reviewed the medical evidence in November 2011 and diagnosed Strickland with attention deficit disorder, depression, and anxiety.[7]  (R. 800, 802, 804).  He opined, however, that these conditions were not severe and that Strickland had only a "mild" functional limitation in her activities of daily living and only "mild" limitations in maintaining social functioning and in maintaining concentration, persistence, or pace.  (R. 809).  The ALJ gave great weight to Dr. Williams's opinion (R. 20-21), which is consistent with and supported by Strickland's treatment records as discussed above.

Strickland argues that "by according 'substantial weight' to the opinion of Dr. Williams (non-examining, consulting physician) the ALJ failed to carry his burden of proving by substantial evidence that Strickland was capable of performing substantial gainful employment."  (Doc. 9 at 14).  She cites *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1995), for the general rule that "reports of physicians who do not examine the claimant, taken alone, do not constitute

---

[7]The ALJ determined that Strickland's attention deficit disorder, depression, and anxiety are not severe impairments (R. 17), and Strickland does not challenge this determination.  (Doc. 14 at 5 n.1).

substantial evidence on which to base an administrative decision." The ALJ, however, did not base his decision on the opinion of Dr. Williams alone, but rather on his opinion in conjunction with Strickland's treatment records. Moreover, as Dr. Williams's opinion is consistent with Strickland's treatment records as a whole, it was appropriate for the ALJ to afford the opinion great weight.[8] *See* 29 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Lastly, Strickland's assertion that the ALJ failed to utilize the PRT in analyzing how her somatoform disorder would impact her functional limitations is simply unfounded. Under the PRT, an ALJ determines whether a mental impairment is severe, and whether it meets or medically equals one of the listed impairments, by rating how the impairment limits the claimant in "four broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Here, the ALJ expressly analyzed Strickland's mental impairments, including her somatoform disorder, under the PRT. He found:

---

[8]The court also notes that the ALJ did not "discount" Dr. Goff's opinion in favor of Dr. Williams's opinion, as Strickland asserts in her brief. As noted, the ALJ afforded great weight to Dr. Williams's opinion only with respect to his diagnoses of attention deficit disorder, depression, and anxiety. (R. 20-21). The ALJ did not rely on the opinion to discount Dr. Goff's diagnosis of somatoform disorder; to the contrary, the ALJ embraced Dr. Goff's diagnosis.

> In activities of daily living, [Strickland] has moderate restriction.  In
> social functioning, [Strickland] has moderate difficulties.  With
> regard to concentration, persistence, or pace, [Strickland] has
> moderate difficulties.  As for episodes of decompensation,
> [Strickland] has experienced no episodes of decompensation, which
> have been of extended duration.

(R. 18).  In addition, the ALJ separately found that because Strickland "does not

have any marked functional limitations," the requirements of Listing 12.07, the

listing for somatoform disorder, were not met.  (*Id.*)  Contrary to Strickland's

assertion, the ALJ did not fail to use the PRT in assessing her somatoform

disorder.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is due to be

affirmed.  An appropriate order will be entered separately.

**DONE,** this the 31st day of March, 2016.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge